Argued and submitted November 18, 1981,
affirmed in part and vacated in part April 12, 1a2

In the Matter of the Marriage of

DESLER,
*Respondent,*

*and*

DESLER,
*Appellant.*

(No. 77-3276, CA A21254)

643 P2d 655

Jack A. Gardner, Eugene, argued the cause for appellant. On the brief were Jeffrey E. Potter and Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

Laura Parrish, Eugene, argued the cause for respondent. With her on the brief was Luvaas, Cobb, Richards & Fraser, Eugene.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

Husband appeals from two orders entered by the trial court which modified provisions of a dissolution decree and awarded wife attorney fees. He argues that his obligation to pay spousal support should have been terminated because his wife was living with another man, in violation of the provisions of the dissolution agreement. He also argues that the trial court did not have jurisdiction to issue the second order, concerning attorney fees, because husband had filed an appeal from the first order before the attorney fees order was entered. In the alternative, he argues that the attorney fee award was incorrect on the merits. We reverse the award of attorney fees.

The marriage of the parties was dissolved effective December 18, 1977. The decree incorporated a property settlement agreement which the parties had reached between themselves. Paragraph four of the agreement states:

"Husband shall pay alimony to Wife in the sum of $100 per month beginning with the month of November, 1977, and such payments shall continue until Wife's death, remarriage, the expiration of ten (10) years from the date of this agreement, *or at such time as Wife should live with another man.*" (Emphasis supplied.)

On February 18, 1981, husband filed a motion for modification of the dissolution decree, seeking clarification of his child support obligations and requesting that the court, in accordance with the provisions of the property settlement agreement, terminate his spousal support obligation, because wife was living with another man. In response, wife filed several motions for modification, seeking to have the court increase husband's child and spousal support obligations and requesting attorney fees.

At the hearing on the motions, Michael McNalley testified that he had lived with wife for nine or ten months during 1980 and 1981. Wife testified that she had neither requested, nor received, any direct financial assistance from McNalley but that he had made repairs around her house that otherwise would not have been made. She also testified that he bought only enough food for himself. Over husband's objection that the language of the agreement was clear on its face, the court admitted testimony from

wife as to the intent of the parties in making the property settlement agreement. She testified that husband's counsel had told her when the agreement was negotiated that spousal support was to terminate only if wife should live with another man who was "footing all the bills."

On April 8, 1981, in a letter opinion, the court allowed wife's motion to extend the monthly child support obligation of husband so long as each such child is a "child attending school," allowed her motion to require husband to pay, in addition to the monthly child support amount, the actual expenses for tuition, books and fees of each child in attending an institution of higher learning, and deferred her motion for attorney fees in accordance with a stipulation made by the parties at the time of the hearing. The order reflecting this decision was entered on May 7, 1981.

On May 14, 1981, wife filed a new motion for attorney fees. On June 5, 1981, husband filed his notice of appeal from the order of May 7, 1981. On June 8, 1981, the trial court entered an order awarding wife attorney fees. The second order did not incorporate the terms of the first. On June 15, 1981, husband filed a notice of appeal from the June 8, 1981, order.

Husband argues that the trial court erred when it issued the supplemental order which awarded wife attorney fees, because that order was entered after husband had filed a notice of appeal from the court's earlier order.[1] In response, wife argues that the earlier order was not final, because it left the attorney fees issue to be resolved at a later time. We find *Bradley v. Oregon Trail Savings and Loan,* 47 Or App 871, 617 P2d 263 (1980), controlling.

In *Bradley,* the trial court had entered judgment for the defendant on the pleadings, and the plaintiff appealed. The trial court then entered a "supplemental judgment," which awarded attorney fees to the defendant. The plaintiff then filed a notice of appeal from the supplemental order. The supplemental order did not incorporate the original order by its terms. In this court, the defendant

---

[1] Husband also argues that the order awarding attorney fees was in error, because wife could not reasonably be said to be the prevailing party. This contention is wrong. *See* ORS 107.135(3).

argued that we did not have jurisdiction over the first appeal, because the judgment left the issue of attorney fees undecided and was therefore not a final order. We held that, because the initial judgment resolved all but the issue of attorney fees, it was final and appealable. 47 Or App at 880.

We then addressed the issue husband raises here: whether a valid appeal from a final order of the trial court removes the court's authority to issue a supplemental order concerning attorney fees. We held that the appeal from the initial judgment did remove the trial court's authority to award attorney fees. *Bradley* controls the instant case; husband's appeal from the May 7 order is valid.[2] The trial court's supplemental order granting attorney fees, however, must be vacated. *Bradley v. Oregon Trail Savings and Loan, supra; Bank of Oregon v. Hiway Products, Inc.,* 41 Or App 223, 231-232, 598 P2d 318 (1979).

We turn now to the merits of husband's appeal from the May 7 order. He argues that the trial court erred in denying his motion to terminate his spousal support obligation, because the property settlement agreement incorporated in the dissolution decree provided that husband's support obligation would terminate at "such time as wife should live with another man" and wife had been living with another man.[3] His position is that the spousal support agreement clearly and unambiguously calls for termination of support payments if wife ever lived with another man and that the court should have enforced the terms of that agreement. Husband also argues, in a separate assignment of error, that parol evidence concerning the meaning of the clause in question should not have been admitted.

---

[2] Wife seeks to distinguish *Bradley* on the ground that it did not involve a *stipulation* by the parties that the matter of attorney fees be deferred, whereas the parties did so stipulate here. Wife does not explain the significance of this distinction, and we are unable to see any.

[3] Husband argues first that this case does not fall within the purview of *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977), where the Supreme Court held that it was against public policy for the trial court to decree that remarriage requires automatic termination of spousal support. We agree that *Grove* does not apply here, because the parties voluntarily entered into the agreement conditioning spousal support upon wife's not living with another man. *Grove and Grove, supra,* 280 Or at 356 n 12a; *Weseman v. Weseman,* 51 Or App 675, 678-79, 626 P2d 942 (1981).

■     We believe that the meaning of a clause such as this in the context of a spousal support agreement is inherently ambiguous. It could have been intended to make support contingent on wife's cohabiting sexually with another man, on wife's receiving some amount of support from another man or, as husband urges here, on wife's merely living in the same house with another man. Because of the ambiguity, admission of testimony about the intent of the parties was proper. *Timberline Equipment Co. Inc. v. St. Paul Fire and Marine Ins. Co.*, 281 Or 639, 576 P2d 1244 (1978); *Bartlam v. Tikka*, 50 Or App 217, 622 P2d 1133 (1981).

■     The only such testimony was from wife, who said that husband's lawyer explained to her that support payments would cease if she chose to live with another man who was "footing all the bills." As was the trial judge, we are satisfied, on the basis of wife's testimony, that the agreement called for termination of payments if wife's living expenses were being paid by another man.[4]

The evidence here indicates only that wife lived in the same house with another man and that the man occasionally made repairs that otherwise would not have been made. The man did not provide any direct financial support. Neither is there evidence, assuming such evidence would be relevant, that the two were cohabiting. We therefore hold that the trial court did not err by denying husband's motion to terminate his spousal support obligations.

The trial court's order awarding attorney fees to wife is vacated. In all other respects, the modification of the original dissolution decree is affirmed. Costs to appellant.

---

[4] In the absence of such testimony, we might reasonably interpret the language of the agreement to mandate termination of payments if wife were to cohabit with another man. In any event, we conclude that any reasonable interpretation would make payments contingent either on wife's engaging in a domestic relationship with another man or receiving significant financial support from another man; it would not be reasonable to conclude that payments were to cease whenever wife merely lived under the same roof with another man.