Submitted on remand from the Oregon Supreme Court December 20, 1983, affirmed February 22, 1984

CITY OF PORTLAND,
*Appellant,*

*v.*

CARRIAGE INN et al,
*Respondents.*

(A8006-03622; CA A25873)

676 P2d 943

Paul C. Elsner, Portland, argued the cause and filed the briefs for appellant.

Rex Armstrong, Portland, argued the cause for respondents. With him on the brief were Leslie M.Roberts and Kell, Alterman & Runstein, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

### BUTTLER, P. J.

This action was brought to enjoin defendants' use of an apartment building for "transient occupancy," claiming that such use violates the Portland Planning and Zoning Code. The trial court granted defendants' motion to dismiss the amended complaint for failure to state ultimate facts sufficient to constitute a claim for relief. Plaintiff appealed. We dismissed the appeal for want of an appealable order. *City of Portland v. Carriage Inn,* 64 Or App 751, 669 P2d 1185. The Supreme Court reversed, reinstated the appeal and remanded to this court for consideration on the merits. 296 Or 191, 673 P2d 531 (1983). We affirm.

In 1978, defendants constructed an apartment building, the Carriage Inn, at 2025 N.W. Northrup Street in Portland. At that time, the area was zoned AO. All necessary building permits and final inspections had been obtained prior to occupancy. After learning that the structure was being used for transient occupancy, plaintiff requested defendants to stop that use, and when defendants failed to comply, this action was filed, allegedly to enforce the provisions of chapter 33.34 of the Code, which plaintiff contends prohibits the use of an apartment building for transient occupancy. Defendants maintain that the Code contains no such restriction.

■■■ Even if it is still true that a zoning law or ordinance, being in derogation of the common law rights of property owners, should be strictly construed in their favor, *see Lane County v. Heintz Const. Co. et al,* 228 Or 152, 158-59, 364 P2d 627 (1961), the primary function of the courts is to discern and declare the intent of the legislative body. *Thompson v. IDS Life Ins. Co.,* 274 Or 649, 652, 549 P2d 510 (1976); *State Highway Com. v. Rawson,* 210 Or 593, 609, 312 P2d 849 (1957). We start with the language of the ordinance. *Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782 (1981).

Chapter 33.34 of the Code is devoted to the "AO Apartment Residential Zone." Section 33.34.020 sets out the following permitted uses in that zone:

"(1) One family dwellings;

"(2) Two family dwellings;

"(3) Apartment Dwellings;

"(4) Boarding and rooming houses."

"Apartment dwelling" is defined in the definitional section of the Code as:

> "a building or portion thereof, *designed* for occupancy by three or more families living independently of each other." §33.12.090. (Emphasis supplied.)

"Family," in turn, is defined in section 33.12.310 as:

> "one person or two or more persons related by blood, marriage, legal adoption or guardianship plus not more than four additional persons, excluding servants all living together as a single housekeeping unit in a dwelling unit.
>
> "* * * * *
>
> "Dwelling unit as used in this section, is as defined in Section 405 of the Uniform Building Code."

Section 405 of the Uniform Building Code defines "dwelling unit" as:

> "A single unit providing complete, independent living *facilities* for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation." (Emphasis supplied.)

As defendants point out, the foregoing definitions indicate that an apartment dwelling is defined primarily in terms of design or structure. It is a building comprised of three or more dwelling units in which each dwelling unit contains all of the facilities necessary for one or more persons to live independently.

Although the Code contains its own definition of "apartment dwelling," plaintiff would have us bifurcate that phrase and use the definition of "dwelling" found in Code §33.12.260 as:

> "a building or portion thereof *designed* for residential occupancy." (Emphasis supplied.)

Then it would have us adopt a dictionary definition of "residential" as "the act or fact of abiding or dwelling in a place for some time," *Webster's Third New International Dictionary* 1931 (1976), and make the inference that transient occupancy is prohibited in an apartment dwelling.

Even if we accepted plaintiff's premise that the separate definition of dwelling governs, plaintiff's argument fails for two reasons: (1) that definition is related to design,

and (2) its definition of "residential" is inconsistent with the Code's use of that term in various contexts. For example, it defines "residential care facility" as:

> "an establishment operated with twenty-four hour supervision for the purpose of serving not more than fifteen persons who by reason of their circumstances or condition require care while living as a single housekeeping unit in a dwelling unit.

> "Care is defined as room and board and the provision of a planned treatment program; and planned treatment means a previously determined program of counseling, therapy, or other rehabilitative social service * * *." §33.12.165.

One who enters a residential care facility for counseling, therapy or rehabilitation may do so for a period ranging from days to months. Thus, "transient occupancy" appears to be permitted in a "residential" care facility.

Similarly, section 33.36.040 provides that the

> "* * * following residential uses are permitted in any part of the AX zone:

> "* * * * *

> "(e) Hotels in which more than half of the rooms are occupied on a weekly or monthly basis."

"Residential," as used in this context, is unambiguously used to describe a facility in which an individual may stay for as little as a week at a time. Finally, Code chapter 33.34, entitled "Apartment Residential Zone," includes within its ambit boarding and rooming houses. A "boarding house" is defined as:

> "a building or portion thereof with not more than fifteen sleeping rooms where lodging and meals for more than five persons are provided for compensation." §33.13.130.

Except for deletion of the reference to meals, a "rooming house" is defined in the same way. § 33.12.630. None of those definitions refers to the duration of occupancy, and we find no basis for concluding from them that transient occupancy is prohibited in a boarding or rooming house.[1] In short, the only

---

[1] A comparison of the definitions for these facilities with the definition for "hotel" confirms that boarding and rooming houses are understood to be, in effect, small hotels. "Hotel" is defined as ˋ

conclusion to be drawn from the foregoing examples is that "residential" was intended to differentiate those uses involving living arrangements for persons from other types of uses such as commercial, manufacturing and farming, rather than to distinguish long-term from short-term occupancy.

Plaintiff also contends that Oregon case law supports its view that transient occupancy is inconsistent with apartment use. It cites *Lyons v. Kamhoot,* 281 Or 615, 575 P2d 1389 (1978), in which the court considered whether a one-month hotel stay was within the scope of the Residential Landlord Tenant Act (ORS 91.700 *et seq*), and *McIntosh v. Schops,* 92 Or 307, 180 P 593 (1919), in which the court discussed the distinction between a hotel guest and a boarder for the purposes of imposing liability on an innkeeper. However, we fail to see how any distinction drawn between an apartment and a hotel in those contexts is relevant here. We must interpret the ordinance before us, and our inquiry necessarily is focused on the definitions set forth in the Code and the context in which words, defined or not, are employed.

■ Finally, we are unpersuaded by plaintiff's contention that the 1976 amendment of chapter 33.34, by deleting hotels and motels as permitted uses in the AO zone and authorizing them only as conditional uses, compels the conclusion that transient occupancy is prohibited in that zone. The amendment means only that hotels and motels are no longer permitted outright after 1976.

■ We conclude that the Code does not prohibit the use of apartment buildings for "transient occupancy." The trial court properly dismissed plaintiff's complaint for failure to state a claim.

Affirmed.

---

"a building designed or used for occupancy as the place of abode of individuals who are lodged with or without meals, in which there are more than fifteen sleeping rooms, and in which no provision is made for cooking in any individual room or suite. § 33.12.420.